[Cite as *Sharp v. Shaker Hts.*, 2021-Ohio-4132.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

NANCY B. SHARP,                              :

    Plaintiff-Appellant,                 :

                                   No. 110260

    v.                                   :

CITY OF SHAKER HEIGHTS,                       :

    Defendant-Appellee.                  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 18, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-929576

---

### *Appearances:*

Joseph T. McGinness and Timothy W. Sauvain, *for appellant.*

Mazanec, Raskin & Ryder Co., L.P.A., James A. Climer and Frank H. Scialdone, *for appellee.*

LISA B. FORBES, J.:

{¶ 1} Nancy B. Sharp ("Sharp") appeals from the trial court's journal entry granting summary judgment to the city of Shaker Heights ("Shaker") in this

negligence case. After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

{¶ 2} On May 18, 2016, Sharp was walking on a public sidewalk in Shaker when she tripped and fell over a piece of metal that was protruding from the concrete (the "Sign Stub"). The Sign Stub was approximately three inches high and located in the middle of the sidewalk. Sharp was injured as a result of this fall. On February 18, 2020, Sharp filed a complaint against Shaker alleging that Shaker "negligently left this piece of metal protruding up from the sidewalk when it cut down a metal sign post that was at one time on the public sidewalk." On January 6, 2021, the court granted summary judgment in favor of Shaker, finding that Shaker "owed no duty to" Sharp, because "there is no evidence that [Shaker] removed the handicap parking sign * * *."

{¶ 3} It is from this order that Sharp appeals.

I. Law

A. Summary Judgment

{¶ 4} Appellate review of an order granting summary judgment is de novo. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact; (2) they are entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

**B. Negligence**

{¶ 5} "It is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶ 6} Pursuant to R.C. 723.01, municipalities "shall have the care, supervision, and control of the * * * sidewalks * * * within the" municipality. The Ohio Supreme Court has held that

> [t]he duty imposed upon municipalities by the provisions of [R.C. 723.01] is the exercise of ordinary care to keep its * * * sidewalks * * * in repair and free from nuisance. Liability for damages for failure to perform such duty cannot arise except upon proof either that its agents or officers actually created the faulty condition from which injury resulted or that it had notice thereof, actual or constructive.

*Cleveland v. Amato*, 123 Ohio St. 575, 176 N.E. 227 (1931), syllabus.

> To impute constructive notice to a city of a nuisance for which it is liable under the provisions of Section 723.01, Revised Code, it must appear that such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger or an invasion of private rights.

*Beebe v. Toledo*, 168 Ohio St.203, 206-207, 151 N.E.2d 738 (1958).

## II. Deposition Testimony

{¶ 7} Against the backdrop of this legal framework, we consider the evidence presented in the case at hand.

## A. Nancy Sharp

{¶ 8} Sharp testified that her fall occurred at 6:15 p.m. on a "sunny, clear" day on the sidewalk in front of 16822 Chagrin Boulevard in Shaker. She walks on this sidewalk approximately once a month to go to a liquor store.

{¶ 9} During her deposition, Sharp was shown the pictures she took of the Sign Stub and asked, "And these are good pictures, you can see the stub pretty clearly. Would that be fair?" Sharp answered, "Yes." According to Sharp, when she fell, she had a bottle of alcohol in her left arm, her purse over her right shoulder, and her car keys in her right hand. She was wearing comfortable shoes, and she was not in a rush. According to Sharp, she did not see the Sign Stub prior to her fall because the "[s]un was at my back. * * * Could have been a shadow. * * * Cars park and hover over the curb. Either case, I did not see it."

{¶ 10} Sharp was not aware of "any other accidents that have taken place as a result of the [Sign Stub]." Furthermore, she was not aware of "anybody aside from perhaps" Shaker who would have information about the Sign Stub. Asked about what Shaker knew about the Sign Stub, Sharp testified as follows: "Somebody removed a sign, my assumption would be the city, since it was on the city property and did not complete the task. So I'm sure somebody was aware." Asked about "knowledge" as opposed to "your presumption or your conclusions," Sharp replied, "I have nothing official, but it is on city property." Asked about anything "unofficial," Sharp answered, "No." Sharp had no information about who installed the sign, she

had no information about who broke or removed the sign, leaving the Sign Stub, and she had no information about how long the Sign Stub was there prior to her accident.

**B. Charles Orlowski**

{¶ 11} Charles Orlowski testified that he is a "forester and utility coordinator" for Shaker. Part of his job is to "maintain the trees in the tree lawn area, parks and City properties throughout the city." Another part of his job entails issuing "right-of-way permits" for street repairs in Shaker. Orlowski has nothing to do with parking signs for Shaker. Orlowski testified that he never saw the Sign Stub although he saw "the remnants where the stub was cut off" subsequent to Sharp's fall. He further testified that the sidewalk pavement around the "remnants" was flat and there did not appear to be any obstacles in the area that someone might trip over.

{¶ 12} Orlowski testified that, according to an undated photograph from Google Earth depicting the sidewalk area in front of a store located at 16822 Chagrin Boulevard, a handicap parking sign was located there at some point. According to Orlowski, Shaker did not install this sign, Shaker does not know who installed the sign, and Shaker does not know who removed the sign. To make this determination, Orlowski reviewed Shaker's purchase orders dating back to 2009 or 2010. Shaker completed a "project" in that area in 2009-2010, and the "descriptions of the streetscapes and the details that we did there, [I] did not see the signpost in that detail." Orlowski also testified that Shaker "could not find any record of any issues,

callouts for a broken sign, anything in regard to the sign being removed from that piece of property."

{¶ 13} According to Orlowski, Shaker's signs are handled by the police department. Orlowski checked with Mike Rowe, who is the Shaker Police Commander, and "he has no record of that sign." There is a record from the police department of Sharp's fall and another record of the Sign Stub being removed on November 2, 2016, subsequent to Sharp's fall.

### C. Michael Rowe

{¶ 14} Michael Rowe ("Com. Rowe") testified that he is the Shaker Heights Police Commander in charge of the Uniform Division, the Traffic Safety Unit, and the Signal Service Unit. According to Com. Rowe, "all the traffic lights and signage throughout the city" fall under his control of the Traffic Safety Unit. Com. Rowe testified that "[t]here's a combination of people who put up signs in" Shaker. "For example, if a stop sign gets knocked down today, my employee will put the sign back up." If any Shaker police officer saw a "damaged or down or bent out of shape" sign, it would be their duty to notify Com. Rowe's department, who would replace the sign. Additionally, his department would replace a broken or missing sign "[i]f we found it or were alerted to it" by someone else.

{¶ 15} Com. Rowe testified that he never saw the Sign Stub, and he does not know when the sign that was in front of 16822 Chagrin Boulevard was installed. Asked who would have firsthand knowledge about the handicap sign while it was still standing, Com. Rowe replied, "I would imagine the contractor that put it up,

that's who would have firsthand knowledge." Asked if "it's your testimony that you don't know how it was taken down," Com. Rowe replied, "That's correct." The following colloquy occurred about who may have removed the sign at issue in the instant case:

Q: Ordinarily people don't remove city signs, do they?

A: Sure, they do.

* * *

Q: And then it's your duty to find out what's missing and put it back up again?

A: Sure. Either we find it or we're alerted to it, we take care of it, yeah.

{¶ 16} Com. Rowe testified as follows: "I have searched before and after the date [of Sharp's fall] and found no record of anyone reporting that there was any damage — damage or injury to anybody associated with the handicap sign," other than Sharp's accident report, which she filed with the Shaker Police Department on June 1, 2016.

{¶ 17} Com. Rowe testified that if there is a "business district" that is being redeveloped, "a contractor typically handles not only the repavement, the roadwork but also the signage and even traffic signals sometimes." The Shaker Police Department does not supervise the contractor nor does the department look at the work after it is done. According to Com. Rowe, there "was a streetscape project many years ago" in the area of Sharp's fall, "and if there were plans for signage, that would be on those plans, if it's consistent with the plans that I see regularly now."

### D. William Gruber

{¶ 18} William Gruber ("Gruber") testified that he is the Law Director for Shaker. Gruber was not aware of any claims involving the Sign Stub or a person being injured at 16822 Chagrin Boulevard prior to Sharp's fall. Gruber testified that Shaker did not have "any record of anyone notifying" him that the Sign Stub existed prior to Sharp's fall. Gruber further testified that information involving the Sign Stub may come to his attention or it may come to the attention of "the human resources department, * * * the mayor's office, * * * the CAO or council member, public works department, police department."

{¶ 19} Gruber received a letter about Sharp's claim, and he did what he does with "any other letter like that," which is to "send that to the public works department because they oversee the right of way generally; and to the HR department because it was a claim." Gruber also testified that Shaker "has general responsibility with anything that's in the public right of way in general." He identified from pictures shown to him at his deposition "the narrow area between the planter and curb [as a] public right of way" and testified that these pictures "could * * * very well be the south side of Chagrin commercial area" where Sharp fell. In these pictures, Gruber identified a "little black mark" and took Sharp's counsel's "word for it" that the mark was the Sign Stub. Gruber also identified a Google Earth picture of the same public way taken prior to Sharp's fall. In this picture, Gruber noticed something that was "pretty blurry" and testified as follows

about it: "I know what handicapped accessible parking signs look like and from far away it could look like that."

{¶ 20} Asked who installed this sign, Gruber answered,

I can't say in this particular situation because I don't know for certain.

\* \* \*

But it could have been done as part of — so we do large streetscapes and I'm aware that the city did a streetscape project in this vicinity at some point in the last 10 to 20 years. I don't know for sure when it was, but at some point we did some sort of streetscape project and so it's possible that the accessible signs were put up as part of that project. So they would have been done by the contractor for that project, or one of their subs.

Otherwise, the police department puts up signs generally and/or contracts out to put them up. So if requested — so if there was no sign there and we needed a handicap accessible sign there and there is no street project so we don't have a larger project going on, the police department would have to hire someone probably to put in a sign like that.

{¶ 21} Asked if he knew who removed that sign, Gruber answered, "No. If a sign was there and taken down — if [photograph 1] is the sign and if [photograph 2] is the stub where that sign used to be in [photograph 1], I have no idea why or how that occurred."

### E. Patricia Speese

{¶ 22} Patricia Speese testified that she is the Public Works Director ("PWD") for Shaker. The PWD oversees "all construction projects to do with infrastructure," as well as "street maintenance" and "the sidewalk inspection program." Asked if the PWD had "anything to do with putting up signs or removing signs," Speese answered, "No." Speese next explained that "once or twice a year,

* * * the sign and signal department and police" will have the PWD "lift the concrete out of the ground" when signs are "too deep and they can't get the signs out * * *."

{¶ 23} Speese further testified that the PWD oversees "the contractor that does the sidewalk paving." Speese identified a photograph of "a strip between a planter and the parked cars" near 16822 Chagrin Boulevard in Shaker. Speese testified that "we don't consider that [a] sidewalk," and the concrete strip is the "responsibility of the store owner." Her testimony continued as follows:

> Q: This piece of concrete over here next to the curb right up where the cars are parked, * * * that is something that has to do with your service department; am I correct?
>
> * * *
>
> A: No.
>
> Q: So you have nothing to [do] with this piece of concrete here?
>
> A: Correct.
>
> * * *
>
> Q: Now I want to show you this little sign. Can you identify that?
>
> A: That looks like an ADA handicap parking sign.
>
> Q: Do you have anything to do with placement of those signs?
>
> A: No, I don't.
>
> Q: And removal of those signs?
>
> A: No.
>
> * * *
>
> Q: Now, if a sign were broken, would you have anything to do with that? In other words, let's say a car ran into it or something?

A: No.

## III. The Trial Court's Journal Entry

{¶ 24} In the case at hand, the trial court based its reasoning behind granting summary judgment to Shaker on Sharp's failure to establish the existence of a duty. "[B]efore [Sharp] can show that [Shaker] owed her a duty that it breached, [Sharp] must establish that [Shaker] was responsible for the removal of the handicap parking sign." The trial court further found that Sharp "fails to establish that [Shaker] was responsible for the removal of the handicap parking sign" and that Sharp's "negligence claim fails as a matter of law."

{¶ 25} In her sole assignment of error, Sharp argues that the "trial court erred in finding that there was no evidence to establish that [Shaker] was responsible for the removal of the handicap parking sign and therefore it owed no duty to [her]." We disagree with Sharp's argument, and, based on our review of the evidence, we agree with the trial court's conclusion.

## IV. Analysis

{¶ 26} Sharp presented no evidence that Shaker had actual or constructive notice of the Sign Stub. There is no evidence in the record that Shaker installed or removed the sign at issue in this case. There is no evidence that Shaker was aware that the sign had been removed leaving the Sign Stub, and there is no evidence of how long the Sign Stub was there. Additionally, there is no evidence of prior injuries caused by the Sign Stub. The evidence indicates some possible theories about who may have knowledge of various parking signs, including what condition they may

have been in, but no evidence about the sign and Sign Stub at issue in the case at hand.

{¶ 27} Sharp argues that in Com. Rowe's deposition, he "admit[ted] that when his department took down the handicap sign at 16822 Chagrin, his only problem was that they did not have a record of removing that specific sign * * *." Our review of the record shows that Sharp has taken Com. Rowe's testimony out of context. Specifically, the testimony at issue is as follows:

Q: When signs are removed, are records kept?

* * *

A: If we close down roadways, they keep records when we change a roadway, which would mean the signage would be removed.

If we took a sign down today that was no longer warranted, * * * we don't document that that's when they took down the sign.

Q: So when you took down the sign, the handicap parking sign at 16822 Chagrin Boulevard, it would not be indicated as to when it was removed, based on what you're saying?

A: No, it wouldn't.

{¶ 28} Com. Rowe did not admit that Shaker removed the sign at issue in this case. In fact, as noted previously, Com. Rowe testified that he did not know how the sign was taken down.

{¶ 29} The instant case is similar to *Burger v. Cleveland*, 8th Dist. Cuyahoga No. 88193, 2007-Ohio-1456, ¶ 19, in which this court affirmed the trial court's granting summary judgment to the city of Cleveland in a negligence case because

"the evidence fail[ed] to create a genuine issue of material fact concerning the City's maintenance of the sidewalk * * *."

{¶ 30} Burger fell while riding his bike on the sidewalk going across a bridge. *Id.* at ¶ 8. Burger sued the city of Cleveland, alleging "that the cause of his fall was gravel on the sidewalk * * *." *Id.* at ¶ 12. The court noted that "Burger testified that he did not know where the gravel came from or how it got on the sidewalk. * * * Burger also fail[ed] to show that the city created or had actual notice of the alleged nuisance, i.e., the gravel on the sidewalk." *Id.* at 14-15. "Without some evidence indicating that gravel was present on the sidewalk for some length of time and/or notice of complaints or prior injuries concerning it to the City, there is no genuine issue of material fact as to whether the City had constructive notice of it." *Id.* at ¶ 18.

{¶ 31} In following *Burger*, we find that there is no genuine issue of material fact in the case at hand, and Shaker is entitled to judgment as a matter of law. The trial court did not err by finding that Sharp failed to establish that Shaker owed her a duty concerning the Sign Stub, and her sole assignment of error is overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
FRANK D. CELEBREZZE, JR., P.J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION

FRANK D. CELEBREZZE, JR., J., CONCURRING IN JUDGMENT ONLY:

{¶ 33} Respectfully, I concur in judgment only. I am troubled that the public has no recourse when an individual is injured by a hazardous sign stub remaining in place after a sign was removed from a city sidewalk. However, because I am bound by existing law, I concur in judgment only with the majority opinion.